WESTERN COAL & MINING CO. v. McCALLUM.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1916.)

No. 4556.

1. APPEAL AND ERROR ⬦959(3)—PLEADING ⬦236(3)—TRIAL AMENDMENTS—
DISCRETION OF COURT.
   The allowance of a trial amendment rests in the discretion of the trial
court, whose rulings will not be disturbed, in the absence of an abuse of
discretion.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3830;
Dec. Dig. ⬦959(3); Pleading, Cent. Dig. § 601; Dec. Dig. ⬦236(3).]

2. CONTINUANCE ⬦30—PLEADING ⬦236(4)—AMENDMENT—REVIEW—ABUSE
OF DISCRETION.
   The act of the trial court in allowing plaintiff to amend her complaint,
after the close of all the testimony and the dispersal of the witnesses, so
as to add another act of negligence not amounting to a new cause of
action, evidence of which was received without objection, and princi-
pally elicited from defendant's own witness, cannot, though defendant
was denied a continuance to meet such ground of negligence, be deemed
an abuse of discretion.
   [Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 99–112; Dec.
Dig. ⬦30; Pleading, Cent. Dig. § 601; Dec. Dig. ⬦236(4).]

3. MASTER AND SERVANT ⬦90—INJURIES TO SERVANT—"VOLUNTEER."
   The term "volunteer," in the law of master and servant, includes not
only a stranger who unnecessarily obtrudes himself into the situation,
but the willing servant, who in order to protect the master's property in
an emergency, with the knowledge and consent of his immediate superior,
does some act not strictly within the contractual scope of his employment,
and as to the first the master owes no duty save not to willfully or in-
tentionally injure him while as to the latter much more may be required.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 139;
Dec. Dig. ⬦90.
   For other definitions, see Words and Phrases, First and Second Series,
Volunteer.]

4. MASTER AND SERVANT ⬦150(5)—INJURIES TO SERVANT—DUTY.
   Where a mechanic employed by a mining company with the full knowl-
edge and consent of his superior, proceeded to assist in the extinguishing
of a mine fire, he cannot be treated as a trespasser, and the mining com-
pany owed him the duty of using ordinary care not to increase the dan-
gers, and so it was negligence to start without warning a fan not in
operation when the fire-fighting began, which disseminated smoke and
resulted in the mechanic's suffocation.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 306;
Dec. Dig. ⬦150(5).]

5. MASTER AND SERVANT ⬦217(5)—INJURY TO SERVANT—ASSUMPTION OF
RISK.
   A servant does not assume the risk of those dangers which he merely
could have known by the exercise of ordinary care on his part, con-
sidering his age, experience, and the circumstances by which he was sur-
rounded.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 578;
Dec. Dig. ⬦217(5).]

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. MASTER AND SERVANT ⚚286(19)—INJURIES TO SERVANT—ACTIONS—NEGLIGENCE—JURY QUESTION.

In an action for the death of a mechanic employed in a mine, who was suffocated while attempting to extinguish a mine fire, *held*, that the evidence of negligence raised a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1026; Dec. Dig. ⚚286(19).]

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by Jocie McCallum, administratrix, etc., against the Western Coal & Mining Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Thomas T. Railey and Edward J. White, both of St. Louis, Mo. (Ira D. Oglesby, of Ft. Smith, Ark., on the brief), for plaintiff in error.

T. P. Winchester, of Ft. Smith, Ark. (W. R. Martin, of Ft. Smith, Ark., on the brief), for defendant in error.

Before HOOK, Circuit Judge, and REED, and BOOTH, District Judges.

BOOTH, District Judge. Action by Jocie McCallum, as administratrix of the estate of William McCallum, to recover damages for the benefit of the next of kin of William McCallum, on account of his death, claimed to have been caused by the negligence of the defendant company. Plaintiff recovered in the court below, and defendant brings error.

It appears from the evidence: That William McCallum was employed by the defendant as a machinist, under the immediate charge of the pit boss, in connection with one of the defendant's mines. His usual duties were above ground, though sometimes he was called below. That about the 14th of April, 1913, a fire broke out in the mine, and the pit boss, Edwards, and several others, including McCallum, went into the mine to try to extinguish the fire. Whether McCallum went in as a volunteer, or by request of the pit boss, is in dispute under the evidence. We do not, however, consider this question as of controlling importance, in view of other facts disclosed in the record.

There were two shafts into defendant's mine—one known as the hoisting shaft, and the other, some 250 feet distant, known as the air shaft. The main south entry of the mine extended from the hoisting shaft for a considerable distance southward. A toolhouse, which was in an opening in the side of the main south entry, was located some 20 or 30 feet south of the hoisting shaft. Parallel with the main south entry, and at a distance of about 30 or 40 feet, extended one of the air courses; the air shaft being connected with the air course. This air course was also connected with the main south entry by a cross-cut. This cross-cut, or passageway, had two doors—one near the air shaft, and the other near the main south entry. Some distance farther south of the air shaft, and also west of the main south entry, was located a mule stable, with a passage connecting the same

with the main south entry. A fan was located in the air shaft, and when in operation it had the effect of sucking the air up from the mine through the air shaft; the air entering downwards into the mine through the hoisting shaft, thus affording ventilation.

The fire in question started at or near the toolhouse in the main south entry. As soon as the fire was discovered, the fan in the air shaft was stopped. This was to stop the draft in that direction, thus preventing the spread of the fire. The men, including McCallum, descended the air shaft, went through the cross-cut to the main south entry, and tried to go along the main south entry to the point where the fire was located. They were unable to reach the fire on account of the smoke, and returned to a point near the cross-cut, and discussed a plan of reaching the fire by going round through the mule stable, and thence in a roundabout way until they could get north of the fire. At this time there were present at that point in the mine Edwards, the boss, Nelson, Hixon, Bailey, and McCallum. Shortly after starting to reach the place of the fire by the proposed new route, Edwards, the boss, told Nelson to tell Bailey, who was in the rear, to go back up the air shaft and start the fan, and Nelson did so; whether this order was heard by McCallum is left uncertain by the evidence. Edwards, Nelson, and Hixon then proceeded through the mule stable, and endeavored to reach a point north of the fire; but upon opening a door at a certain point in one of the passages, they were again prevented by smoke from advancing, and they turned back again to the mule stable for the purpose of returning to the air shaft. By this time the mule stable was filled with smoke, and they could not reach the air shaft through the mule stable and main south entry; so they went through an overhead passageway, called the overcast, leading over the main south entry to the air course connected with the air shaft, and in that way escaped.

In the meanwhile Bailey had followed out his instructions and started the fan; the effect of this was to create a suction and draw the smoke from the place of the fire, round through the various passages, and into the air shaft. Whether McCallum followed Edwards, Nelson, and Hixon closely until they first reached the mule stable, or whether he remained near the cross-cut until after they had gone, is uncertain. However, he was found an hour or two later in the mule stable, after the fire had been extinguished. He was then unconscious, and died several days after from the effects of the suffocation.

In the complaint plaintiff alleged a number of items of negligence against the defendant company—among others, failure to use care in the selection of a competent pit boss; failure to make provision for extinguishing fire in the mine; failure to give instructions as to the method of fighting a fire; failure to keep the doors closed in the cross-cut leading from the main south entry to the air shaft, but "negligently leaving said doors open, and by reason of the operation of said fan in drawing the smoke and heat through said passageway, effectually cut off all means of ingress and egress."

At the close of the evidence, defendant moved for a directed verdict. During the course of the argument upon the motion, plaintiff

moved to amend the complaint to conform to the proof, by adding an allegation, at several places in the complaint, to the general effect that defendant negligently caused the fan to be started in the air shaft after the men had descended the air shaft into the mine. This amendment was objected to by the defendant, but the objection was overruled, and the amendment allowed. The evidence in the case had been closed, and the defendant's witnesses had been allowed to disperse, prior to defendant's motion to direct a verdict. After the amendment was allowed, the defendant moved for a continuance, and, this being denied, moved for a postponement of further proceedings in the trial until it should have an opportunity of introducing further evidence upon the point covered by the amendment to the complaint. The motion for a postponement was denied, and the case was submitted to the jury. The court in its instructions to the jury eliminated all questions of negligence in regard to the matters specified, except the starting of the fan.

It was left to the jury to determine whether or not it was negligence on the part of the pit boss to start the fan in the air shaft while the men were still in the mine; also whether McCallum knew, after he was in the mine, that the fan had been started; also, if he did know of this, whether he appreciated the effect and the risk resulting therefrom. It was also left to the jury to determine whether McCallum died from injuries by the suffocation; also whether he was guilty of any negligence himself. The jury found in favor of the plaintiff upon the issues submitted.

There are 30 assignments of error. They may be arranged in 4 groups: First, those relating to the allowance of the amendment to the complaint, and the refusal of a continuance or a postponement of the trial; second, those relating to the exclusion of certain testimony offered on behalf of the defendant; third, those relating to the giving of certain instructions covering the question of assumption of risk, and the refusal to give others on the same topic; fourth, those relating to the refusal to direct a verdict in favor of the defendant.

[1] As to the first group, it is sufficient to say that these matters were within the discretion of the trial court, and rulings thereon do not furnish ground for reversal in the absence of an abuse of discretion. See Tilton v. Cofield, 93 U. S. 163, 23 L. Ed. 858; Bamberger v. Terry, 103 U. S. 40, 26 L. Ed. 317; Mex. Central Ry. v. Pinkney, 149 U. S. 194, 201, 13 Sup. Ct. 859, 37 L. Ed. 699; Mex. Central Ry. v. Duthie, 189 U. S. 76, 23 Sup. Ct. 610, 47 L. Ed. 715; McDonald v. State of Nebraska, 101 Fed. 171, 41 C. C. A. 278; Vanarsdale v. Hax, 107 Fed. 878, 47 C. C. A. 31; Dunn v. Mayo Mills, 134 Fed. 804, 67 C. C. A. 450; Stillwagon v. B. & O. Ry., 159 Fed. 97, 86 C. C. A. 287; Hernan v. American Bridge Co., 167 Fed. 930, 93 C. C. A. 330; Southern Ry. v. Gadd, 207 Fed. 277, 125 C. C. A. 21; Cœur D'Alene Lumber Co. v. Thompson, 215 Fed. 8, 131 C. C. A. 316, L. R. A. 1915A, 731.

[2] It is to be noted that the amendment to the complaint set up no new cause of action; it simply added one more item of alleged negligence, and this item had already been brought out in the testimony.

The matters of the operation of the fan, the stopping of it when the fire was discovered, the starting of it after the men had descended into the mine by way of the air shaft, why it was started, the propriety of starting it at that time, and the effect of starting it, were all testified to, and the evidence was introduced without objection. The defendant could not have been taken by surprise; the facts were within its own knowledge, and were testified to mainly by its own witnesses. Under the circumstances, we hold that there was no abuse of discretion on the part of the trial court in allowing the amendment and refusing a continuance.

[3] As to the second group, covering the exclusion of testimony: The testimony sought to be introduced related to certain conversations had by Edwards, the pit boss, with McCallum prior to going into the mine. The main purpose, apparently, on the part of the defendant in trying to introduce this testimony, was to show that McCallum was a volunteer in going into the mine. The defendant takes the position that, if McCallum was a volunteer, the defendant owed him no duty except to refrain from intentionally injuring him.

The term "volunteer," in the law of master and servant, has come by usage to cover a large class of persons, ranging from the casual stranger, on the one hand, who unnecessarily obtrudes himself into the situation, to the willing servant, on the other hand, who, in order to protect his master's property in an emergency, but with the knowledge and consent of his immediate superior, does some act not strictly within the contractual scope of his employment. The various persons in this class called "volunteers" do not stand upon the same plane in respect to the duty which the master owes to them. One may be a mere trespasser upon the master's premises; another may be a licensee with an interest. To the former, the master's duty may be simply not to willfully or intentionally injure him; towards the latter, much more than this may be required.

[4] In the case at bar, there is no dispute that Edwards the pit boss represented the company in going into the mine, and in taking charge of the extinguishing of the fire. There is no question raised as to his authority to direct the employés of the company in regard to putting out the fire, at least, those employés whose duties called them into the mine. There is no dispute in the evidence that the services of McCallum were accepted by Edwards, whether they were directly requested or not. So that, even though McCallum may be classed under the term "volunteer," when used in its broadest sense, it cannot, in our opinion, be said that the company owed him no duty, or that such duty consisted merely in not intentionally injuring him. The company owed him the duty of using ordinary care not to increase the dangers of an already dangerous situation, in which he was known to be. As a volunteer McCallum may have assumed the risk of the conditions as they existed when he entered the mine. He cannot, in our judgment, be held to have assumed the new risk, when the defendant by affirmative action increased the danger, unless he had knowledge of the change in the situation after he entered the mine,

and appreciated the risk of such change. See Thompson on Negligence, §§ 4675–4682.

Miner v. Franklin County Tel. Co., 83 Vt. 311, 75 Atl. 653, 26 L. R. A. (N. S.) 1195, in which case the court used the following language:

"The voluntary offer of a willing servant to make himself useful in a matter not covered by any express command, when the proffered service is accepted by his superior, although not by an approval expressed in words, cannot be said as a matter of law to put the servant outside the limits of his employment."

In the case at bar we have the added element of emergency.

[5] As to the third group, touching the matter of instructions regarding assumption of risk: Typical of these assignments is the following:

"The court erred in instructing the jury that deceased only assumed such risks as were patent and readily observable, or such as could be readily observed," but should have added "that he assumed such dangers as were patent and readily observable, or such as he knew, or could have known by the exercise of ordinary care upon his part, considering his age, experience, condition, and the circumstances by which he was surrounded."

The additional clause which the defendant requested the court to give is not a correct statement of the law, as announced in the decisions of this court. See Owl Creek Coal Co. v. Goleb, 232 Fed. 445, 146 C. C. A. 439.

[6] As to the fourth group, touching the matter of directing a verdict upon all the evidence in the case, in view of what we have already said, we think that this requires neither discussion nor the citation of authorities. Our conclusion is that the court was plainly justified in submitting the case to the jury, and the evidence sustains the verdict.

Judgment affirmed.