# DUNDEE PETROLEUM CO. v. CLAY.[*]

(Circuit Court of Appeals, Eighth Circuit. August 14, 1920.)

No. 5496.

1. **Continuance &⇒23—Testimony of absent witness as to subsequent transaction held not ground for continuance.**

In an action for broker's commission, where plaintiff testified that, after he instituted negotiations with the persons who finally bought the property, he was excluded from further negotiations, which were completed without him, the absence of a witness who could testify only that plaintiff took no part in the negotiations to which he was a party, which were subsequent to the time plaintiff claimed his wrongful exclusion, does not entitle defendants to a continuance.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

267 F.—10          Rehearing denied December 20, 1920.

**2. Continuance ⚖⇒26 (3)—Denial for witness whose deposition had been taken not abuse of discretion.**

It was not an abuse of discretion for the trial court to deny a continuance because of the absence of a witness whose deposition, taken after plaintiff's deposition, answered plaintiff's testimony, and where there was no showing as to the reason why the witness was not present at the time the case was set for trial.

**3. Appeal and error ⚖⇒966 (1)—Continuance ⚖⇒7—Rests in trial court's discretion.**

The granting of a continuance is within the sound discretion of the trial court, and its ruling thereon is not reversible error, unless it clearly appears that there has been an abuse of discretion.

**4. Continuance ⚖⇒30—Denial of continuance after amendment of complaint held not error.**

In an action for a broker's commission, where, at the trial, plaintiff amended his complaint, so as to conform to evidence of negotiations with an agent of the buyers not named in the complaint, it was not reversible error to deny a continuance to procure the testimony of the agent for defendants, where there was no showing what such testimony would be, and no showing that the witness was not at the place, within 100 miles of the trial, where he had been a few months before.

**5. Brokers ⚖⇒88 (2)—Evidence held sufficient to take issue of contract for compensation to jury.**

In an action for a broker's commission, plaintiff's testimony that he was employed at an agreed commission to procure sale of defendant's interest in oil properties to the same buyers to whom he was then negotiating a sale of other interests in those properties *held* sufficient to raise an issue for the jury, though defendants and the buyers denied that plaintiff had taken any part in the negotiations.

**6. Trial ⚖⇒260 (4)—Refusal of instructions as to plaintiff's interest not error, after instruction as to interest of all witnesses.**

Where the court instructed the jury to consider the interest of a witness in testing his credibility, it was not error to refuse an instruction requested by defendant to take into consideration the financial interest of plaintiff in determining the weight to be given his testimony.

**7. Brokers ⚖⇒85 (6)—Declarations of agent of buyer admissible to show readiness to buy.**

In an action for a broker's commission, declarations by an agent of the buyer, who was testing the property for the buyer, are admissible on behalf of the plaintiff to show the readiness and willingness of the prospective buyer.

**8. Appeal and error ⚖⇒1033 (6)—Refusal of instruction allowing recovery on quantum meruit held favorable error.**

In an action on an express contract for a broker's commission, where the court had instructed that, if the jury did not find the express contract was made as alleged, their verdict should be for defendants, the refusal of an instruction, requested by the defendants, authorizing recovery by plaintiff on quantum meruit, if the express contract was not proved, was not prejudicial to the defendants.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by R. P. Clay against the Dundee Petroleum Company to recover a broker's commission. Judgment for plaintiff, and defendant brings error. Affirmed.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. L. Stuart, of Oklahoma City, Okl. (W. A. Ledbetter, R. R. Bell, and E. P. Ledbetter, all of Oklahoma City, Okl., on the brief), for plaintiff in error.

F. E. Riddle, of Tulsa, Okl., and E. G. McAdams, of Oklahoma City., Okl. (Harry Hammerly, of Chickasha, Okl., on the brief), for defendant in error.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. The Crystal Oil Company (an Oklahoma corporation) in 1916 was the owner of oil leases upon several hundred acres of land situated in what is known as the Healdton oil field in the state of Oklahoma. It sublet to the Dundee Petroleum Company (a Delaware corporation) about 800 acres of its holdings. This sublease was a working contract for development purposes, in which the Dundee Company had a one-third interest and the officers of the Crystal Company a one-third interest; the Crystal Company retaining a one-third interest. The Dundee Company maintained offices in Tulsa, Okl., and in New York City. Thomas Carter was the vice-president of the company, and general manager in charge of its office at Tulsa, Okl. R. P. Clay, the plaintiff, in 1916 resided at Ardmore, in the state of Oklahoma. The Crystal Oil Company maintained its principal office at Ardmore. Wirt Franklin in 1916 was president and manager of the Crystal Oil Company. H. F. Sinclair was a New York capitalist investing, with his associates, quite heavily in the oil fields of the state of Oklahoma, and at said time was operating in said state through one or more corporations spoken of in the evidence as the Sinclair interests. One of his companies was known as the Sinclair Oil Company, with headquarters at Tulsa, in the state of Oklahoma. In 1916 the officers in charge were E. R. Kemp and C. E. Crawley, vice-presidents. C. N. Haskell was the agent of H. F. Sinclair in investigating and negotiating for properties in the oil fields of the state

In the spring of 1916 Wirt Franklin and his associates owned 74 per cent. of the stock of the Crystal Oil Company. H. F. Sinclair about that time acquired the ownership of the remaining 26 per cent. of the stock of said company. Wirt Franklin and his associates, individually and as officers of the Crystal Company, employed the plaintiff as a broker to negotiate a sale to H. F. Sinclair, or to his interests of their 74 per cent. of the stock of said Crystal Company and of their interest as individuals in the Dundee lease. The plaintiff undertook to consummate such a deal and began negotiations with C. N. Haskell and other representatives of the Sinclair interests in April, 1916. About the same time, as he claims, and as testified by him at the trial, he interviewed Thomas Carter, the vice president and manager of the Dundee Company, in regard to selling to H. F. Sinclair, or to his interests, the holdings of the Dundee Company under its said lease, and as he claims and testified at the trial, Thomas Carter authorized him to negotiate a sale of the interest of the Dundee Company in

the Dundee lease for $400,000, and agreed to pay a commission of 5 per cent., or $20,000.

It is not disputed that the plaintiff negotiated and finally consummated a sale to H. F. Sinclair of the 74 per cent. of stock of the Crystal Company held by Wirt Franklin and his associates, and also their individual interests in the Dundee lease. This deal was closed in October, 1916, by a written agreement entered into between the parties, conditioned, however, upon the gauge of the properties of the Crystal Company showing the representations made by the plaintiff and by Franklin and his associates to be true. The guage was satisfactory, and the deal finally closed by payment of the purchase price and the taking over of the stock of the said Crystal Company and all of the property of the same, and the taking over of the right of said Franklin and others in the Dundee lease, about the 1st of November, 1916. H. F. Sinclair, or his interests, continued to operate the property so taken over in the name of the Crystal Company. In the latter part of November, through negotiations conducted between Thomas Carter, the president of the Dundee Company, and C. E. Crawley, vice president of the Sinclair Oil Company, the interest of the Dundee Company in said sublease was acquired by and transferred to the Crystal Oil Company. This purchase and sale included, not only the interest of the said Dundee Company in the said sublease, but also its interest in tanks and oil stored therein. The total purchase price paid for all of said property was $525,000, $300,000 in cash and the balance in notes, one for $100,000 and one for $125,000.

It is claimed by the plaintiff, and he testified at the trial, that from April until the 1st of November he kept in touch with Thomas Carter in respect to the sale of the said Dundee interests to Sinclair, or to the Sinclair interests, and that he presented the same to C. N. Haskell, and to H. F. Sinclair personally, and that the agreement and understanding between him and the said Haskell was that if H. F. Sinclair, or the Sinclair interests, were able to acquire the Crystal interests, they would take over the Dundee interest at the price named. He testified that he frequently communicated to Thomas Carter the state of the negotiations and the understanding between him and the said C. N. Haskell, and that the said Carter constantly assured him that the situation with respect to the negotiations was satisfactory. He testified that, at the time of the making of the written agreement between H. F. Sinclair and the Crystal people, he advised the said Carter of the situation and of the requirement for a gauge to be taken of the property, and that the time necessary to take said gauge would be about 15 days, and that immediately the gauge was taken the Crystal deal would be closed, and the Dundee matter could immediately be taken up and successfully concluded, and that the said Carter expressed his satisfaction and reiterated again his willingness to pay the commission stipulated.

On the 31st of October Carter wrote the plaintiff a letter, in which he says:

"Referring to the conversation I had with you about a fortnight ago in continuation of the conversation I had with you in New York, this is to ad-

vise you that all tentative conversations then held regarding the possible sale of this company's interests in the properties of the Crystal Oil Company in the Healdton field must be considered at an end. I shall, however, always be pleased to consider any proposition you may put before us; but it must be understood that all previous negotiations must be considered as having been terminated, and anything in the future will be the commencement of a fresh negotiation"

—and thereafter refused to recognize the plaintiff as agent for the sale of the interest of the Dundee Company, and denied that the plaintiff had ever been its agent for the sale of its interest, and claimed, and so testified in the trial below, that he negotiated the sale of the Dundee interest through Crawley and made a sale to the Crystal Oil Company, and was paid by it the purchase price agreed upon. In his testimony he denies that he ever employed the plaintiff to sell the interest of the Dundee Company, or authorized him to negotiate for its sale to Haskell as representing Sinclair, or to negotiate its sale to any one. Sinclair and Haskell both testified as witnesses in behalf of the defendant, and denied substantially and in effect the testimony of the plaintiff material to the issues in the case.

In order to understand certain of the grounds urged by the Dundee Company as grounds for reversal of the cause, it should be added that Thomas Carter was a British subject, and in 1917 was appointed by the British government as a member of the food commission of said government in the United States. Carter thereupon took up his residence in New York City, and at the time of the trial of this cause in May, 1919, had not returned to the state of Oklahoma. W. R. Humes, the secretary and treasurer of the Dundee Company, was a British subject, and in 1917 went from the state of Oklahoma to England and joined the English army, and at the date of the trial of this action in May, 1919, he had not returned to the state of Oklahoma. C. E. Crawley, above named, vice president of the Sinclair Oil Company, with headquarters at Tulsa, in the state of Oklahoma, had charge of the gauge of the properties of the Crystal Oil Company above mentioned.

This case was set for trial in April, 1916, at the Enid term of the court (Eastern district of Oklahoma). Under date of April 4th the parties filed a stipulation that the cause be stricken from the assignment for trial at the Enid term of court. Later in April, in the assignment of cases to be tried at the Guthrie term of the court, this case was set for trial for the 12th of May. On May 10th the defendant Dundee Company moved the court for a continuance of said cause for the term, which was denied. This motion was repeated on the morning of the 12th of May, and again denied. The applications for a continuance upon the 10th and upon the 12th of May were sworn to by one of the attorneys for the defendant company, and state substantially the same facts. The ground for a continuance was the absence of Thomas Carter, the vice president and general manager of the said Dundee Company, and W. R. Humes, the Secretary and treasurer of said company, and necessary witnesses at the trial of the case. Trial was had on the 12th day of May, resulting in a verdict and judgment for plaintiff. The defendant Dundee Company brings

error, and assigns the action of the trial court in overruling its motions for a continuance as ground for the reversal of said judgment.

[1] It appears from the affidavit upon which the motion for a continuance on May 12th was made that W. R. Humes would testify that he participated in part of the transaction resulting in the sale of the property described in plaintiff's petition, and that in the part of said transaction that he participated in the said plaintiff in no way participated or was concerned, and that said Humes knew of no contract by which the Dundee Company was to pay the plaintiff a commission on the sale of the property of said company. The plaintiff did not mention Humes in his testimony, and, as it is not disputed that the negotiations which resulted in the sale of the property in question were conducted by Carter through Crawley after the plaintiff had been excluded from further participation therein by Carter, we fail to see how it would be material to have the testimony of Humes to the effect that the plaintiff in no way participated or was concerned in that part of the said transactions in which he (Humes) participated, as it must be assumed that his testimony would refer to the negotiations between Carter and Crawley. It was not error, therefore, to deny the continuance by reason of the absence of the witness Humes.

[2] The deposition of Carter had already been taken in the case and was introduced by the defendant upon the trial. In his deposition he gives his version of the transaction, and it has not been pointed out and we have not been able to find any statement made by the plaintiff that has not been substantially met and denied by the witness Carter. This is more readily accounted for when it is known that the deposition of the plaintiff was taken at the same time and place that the deposition of the witness Carter was taken, and that said deposition, or a copy thereof, was in the hands of the defendant or its counsel.

From the stipulation signed by counsel for the parties on April 4th, it appears that Carter was at that time in New York City. On the 30th of April, after the case had been set for trial on the 12th of May, it appears that he was in Tampico, Mexico. Why he had gone to Tampico, Mexico, from New York, how long he would stay, or why he could not return to Oklahoma in time for the trial, are unexplained. No explanation is offered of the failure of those in charge of the local office at Tulsa to keep in touch with the movements of Carter, or of the defendant's counsel to keep in touch with the action of the court in the setting of this case for trial at the Guthrie term of court. The stipulation filed continued the case for the Enid term only. The Guthrie term followed the Enid term, and no reason is suggested why counsel should not have expected the case to be set down for trial during the Guthrie term.

[3] The granting of a continuance is a matter within the sound discretion of the trial court, and the authorities are all to the effect that the granting or refusing to grant a continuance is not reversible error, unless it clearly appears that there has been an abuse of discretion. In this case we do not think that it clearly appears that there was an abuse of discretion in the action of the trial court in over-

ruling the application of the defendant for a continuance. Western C. & M. Co. v. McCallum, 237 Fed. 1003, 151 C. C. A. 65.

[4] At the conclusion of the trial the plaintiff was permitted by the trial court to file an amended complaint to conform the pleadings to the proof. In the original complaint the plaintiff had alleged that the deal had been negotiated and finally consummated with the Sinclair Oil Company. During the trial of the case it appeared that the deal had really been negotiated with H. F. Sinclair, and the Dundee interest conveyed to the Crystal Oil Company. The second amended petition alleged the fact in accordance with the evidence in the case. In addition, the second amended complaint mentioned C. E. Crawley as one of the parties with whom plaintiff negotiated as an agent of H. F. Sinclair. At the time the defendant objected to the allowance of these amendments, and asked for a continuance, so as to permit it to secure the deposition of C. E. Crawley. The motion was overruled, and this action of the court is assigned as error.

The defendant, at the time that it made its motion, did not state the testimony which it expected C. E. Crawley to give, should his deposition be taken. Nor does it appear from the record where Crawley was at that time, or that it was not within the power of the defendant to have called him at once to testify in the case. The record shows that Crawley, in November, 1916, was at Tulsa, and in charge of the business of the Sinclair Oil Company as one of its vice presidents. Tulsa is situated less than 100 miles from Guthrie, with reasonably direct railroad connections between the two places. A jury had been impaneled, all the evidence in the case introduced, and both sides had rested, when this matter came up. If, after having learned that the name of Crawley had been added to the complaint as one of the agents of Sinclair with whom plaintiff claimed he had negotiated, the defendant had communicated with him (Crawley) and learned what his testimony would be, and had then stated to the court what it expected to prove by him and the time it would require to bring him from Tulsa to Guthrie to testify, the matter would present a different aspect. It must be noted, too, in this connection, that the plaintiff, in his testimony on the morning of the 12th had referred to Crawley and stated the conversation which he claimed had taken place between them in October; so that from the morning of the 12th the defendant had been advised of the state of the evidence which suggested the advisability of calling, or at least of communicating with, Crawley, and learning what his testimony would be in respect to the conversation testified to by the plaintiff.

On the showing made it does not clearly appear that there was an abuse of discretion in the action of the trial court in the overruling of defendant's motion for a continuance at the close of the trial.

[5] The defendant also assigns as error the refusal of the trial court to direct a verdict in its favor. From the foregoing statement of the testimony of the plaintiff and of the witnesses called by the defendant, it is apparent there was a conflict in the evidence, and the case was one, therefore, for the jury.

[6] The court instructed the jury that in testing the credibility of the witnesses it was proper for them to consider the interest of a wit-

ness in the result of the trial. The defendant requested the court to instruct the jury that:

"The plaintiff has testified as a witness in this case, and [in] determining the weight to be given his testimony you are authorized under the law to take into consideration his financial interest in the result of this case."

The defendant did not ask for an instruction, applicable to all witnesses, to the effect that the jury might take into consideration their interest, if any, in the result of the case as affecting their credibility, but singled out the plaintiff alone as a witness whose interest should be considered in weighing his testimony. While we do not wish to be understood as holding that such an instruction as requested, in a proper case and under certain circumstances, might not be given without error, we do hold in the present case that the instruction given by the court was clearly proper, and the refusal of the court to give the requested instruction was not error, under the circumstances of this case.

[7] The plaintiff Clay was permitted to testify, over the objection and exception of the defendant, to a conversation had between him and C. E. Crawley, which we have heretofore referred to. The conversation referred to appears in the record in this way:

The plaintiff, being asked as to what he had found out in regard to the result of the gauge, answered:

"Mr. Crawley said, about the tenth day of the gauge, 'Clay, it is getting along very nicely.' 'Part of the Crystal lease was about a hundred barrels short, but I believe the wells are in shape now and they may make it up. It will run very close to your statement, and the Dundee property will show about 50 barrels a day more than your estimate; so far it looks very encouraging.' "

This testimony was objected to as hearsay, and is assigned as error, and it is claimed by the defendant company that said testimony was prejudicial to its rights, in that it tended to show that the purchase of the Dundee interest was being considered by the Sinclair people along with and at the same time with the purchase of the Crystal interest, contrary to the testimony of Carter, Haskell, and Sinclair, called by the defendant.

Considered from the standpoint of the defendant and its theory of the case only, this contention is true; but this testimony was admitted in the plaintiff's case, and must be considered from the standpoint of the plaintiff's theory of the case, which was, and he so testified, that he had been employed by the Dundee Company, through Carter, its managing officer, to sell its interest in the sublease to Sinclair, or the Sinclair interests; that said sale was being negotiated contemporaneously with the negotiations conducted for the sale of the Crystal interest; that the Crystal interest had been contracted for by Sinclair; that the understanding was, if the Crystal interests were taken over by Sinclair, he would take over the Dundee interest; that the taking over of the Crystal interest depended upon the result of a gauge then being made; that this gauge was being made of the property of both the Crystal and the Dundee interests; that plaintiff had informed Carter of the situation, and of the purpose of the gauge, and

the results which would flow from it; that Crawley had been designated by Sinclair to make this gauge.

The gauge, therefore, was being made, from the plaintiff's standpoint, in the interest of both the Crystal Company and of the Dundee Company, all of which Carter understood and agreed to. It also appears that Carter was advised and knew what representations had been made by the plaintiff as to the flow of the wells in which the Dundee Company was interested, and it would be natural, therefore, that he (Carter) as well as Clay, would be interested in knowing the result of the gauge.

The witness, immediately following the detailing of the above-quoted conversation, continued by saying:

"I went on down to the Tulsa Hotel for the purpose of looking Mr. Carter up. * * * He asked me how the deal was progressing. I told him: 'Fine as silk. Their property was showing about 50 barrels a day more than we represented it to show; that the Crystal was off a little bit, but that wouldn't have any effect.' He agreed with me to be at Mr. Crawley's office on the 30th day of October. I told him I had informed Mr. Crawley he would be on hand and would deliver this Dundee interest."

Crawley, in supervising the gauge being made, was admittedly the agent of Sinclair in his purchase of the Crystal interest, and upon plaintiff's theory of the case he was also, in supervising said gauge, the agent of Sinclair in the purchase of the Dundee interest, and any statement made by him with respect to said gauge would be the statement of Sinclair, his principal, and such a statement, if tending to show that the plaintiff had found a purchaser ready and willing to buy the defendant's property on its terms, would be material and relevant to show whether or not plaintiff's efforts procured the sale which was subsequently made by Carter through this same man Crawley. Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 631; Ross v. Moskowitz, 100 Tex. 434, 100 S. W. 768; Luhn v. Fordtran, 53 Tex. Civ. App. 148, 115 S. W. 667. Of course, this testimony was not competent to prove, nor indeed did it tend to prove, that Carter had ever employed the plaintiff as a broker to sell the Dundee interest.

[3] The defendant company requested the court to instruct the jury that:

"If you find from the evidence that there was no contract for the payment to the plaintiff of a commission to sell or assist in selling the property described in the plaintiff's petition, but that the plaintiff, with the consent or at the suggestion of the defendant, rendered services in attempting to sell the property, then you may find for the plaintiff for the value of the services so rendered."

That is, the defendant submitted a request that the court instruct the jury that the plaintiff might recover upon a quantum meruit, if it found that there was no express contract as alleged in the complaint. This request the court refused. The court instructed the jury that, if the plaintiff was not authorized to find a purchaser as alleged in his complaint, he could not recover, and the court, having thus instructed the jury that, in order for the plaintiff to recover, he must prove an express contract, we fail to see how the defendant could be prejudiced by the refusal of the court to instruct the jury that he might recover

upon an implied contract, even though it be assumed that such instruction was proper under the pleadings.

The defendant also claims that the trial court erred in giving certain instructions to the jury in which the court stated the rules of law applicable to a suit by a broker for the recovery of a commission, substantially upon the ground that the evidence was insufficient to justify the court in submitting the case to the jury—the same ground, in effect, upon which it was claimed that the court should direct a verdict in defendant's favor. These assignments are without merit.

We find no prejudicial error in the record. Judgment affirmed.