## R. E. LUHN v. W. B. FORDTRAN.

### Decided January 7, 1909.

**1.—Contract—Agency—Sale of Land.**

Where no terms were specified in the contract for the sale of land by the agent except that the owner was to receive a net sum and the agent was to receive the amount above that sum as commission, an offer by the agent to sell the land alone for a less sum which contemplated the payment to the owner of the agreed net price, the agent to take the improvements as commission and make up the difference, was no departure from the terms of the contract.

**2.—Same—Cancellation—Time of Performance.**

The agent having the exclusive right to sell property of the principal and the time within which he was to have such exclusive right being extended until he could get a certain party to agree and bind himself to buy, the principal had no right to cancel the contract without the agent's consent, so long as the negotiations were going on between the agent and party contemplated with the prospect of an eventual sale, within reasonable limitations as to time.

**3.—Same—Delay in Performance—Reasonable Time.**

Ordinarily what is a reasonable time within which an act should be done is a question for the jury; but where no inference of unreasonable delay can be properly drawn from the evidence by a reasonable mind, there is no issue of fact for the jury.

Appeal from the District Court of Harris County.   Tried below before Hon. Norman G. Kittrell.

*Hogg, Gill & Jones,* for appellant.

*Masterson, Atkinson & Masterson,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is a suit by W. B. Fordtran against R. E. Luhn to recover the sum of $4,000 as commissions for the sale by plaintiff of certain real estate, the property of defendant. Plaintiff sued upon contract in writing executed by defendant, whereby plaintiff was employed as a real estate agent or broker to sell the property, for the price of $28,500 net to the owner for the lots and improvements, the agent to have all over that as his commissions. The property, including improvements, was sold for $32,500 to the Shearn Church, and plaintiff sues for the difference between that price and $28,500. Defendant claims that on account of the long delay on the part of plaintiff in closing the deal he canceled the contract between himself and plaintiff, in which plaintiff acquiesced, and undertook to sell and did make the sale to Shearn Church himself. The case was tried with a jury, and resulted in a verdict and judgment in favor of plaintiff for $4,000 and interest from date of the sale. From the judgment defendant prosecutes this appeal.

*Conclusions of fact.*—Giving proper weight to the verdict of the jury on all disputed issues of fact, we find the following conclusions of fact from the evidence: Appellant was the owner of certain lots with the improvements thereon in the city of Houston, and appellee was a real estate agent or broker in said city. Some short time prior to June, 1906, appellant employed appellee to sell the property, the price to be $28,500 net to appellant, the agent to have all over that as his commissions.

On June 18, 1906, a written contract was executed on the part of appellant in the form of a letter to appellee, which is as follows:

"Houston, Texas, June 18, 1906.

"Mr. W. B. Fordtran,
　　"Houston, Texas.

"Dear Sir: This confirms my verbal agreement heretofore made with you, wherein I agreed to accept the sum of ($28,500) twenty-eight thousand, five hundred dollars, net to me, for lots Nos. one (1), two (2), south one-half of lot No. three (3), and east one-half of lot No. twelve (12) in block No. (296) two hundred and ninety-six, south side Buffalo Bayou, Houston, Texas, fronting 125 feet on Main Street and 125 feet on Clay Avenue, together with all improvements thereon situated. I agree to pay you, as your profit, all over and above said sum of $28,500 realized in the sale of said property to the Shearn Church, and hereby give you the exclusive sale of said property for said church. This price is good only for the Shearn Methodist Church. I agree to pay all taxes due on said property up to and including the year 1906, and will furnish abstract of title to said property brought down to date at my expense, and will give said church possession of said property at the earliest date, September 1, 1906, or later than September 1, 1906, to be agreed upon at a later date, in case you make sale to said M. E. Church.

　　　　　　　　　"Yours very truly,
　　　　　　　　　　　"R. E. Luhn."

The trustees of Shearn Church were looking out for a site on which to erect a new church building, having disposed of their old building and site, the final consummation of which sale, however, was delayed on account of some defect in their title which they were endeavoring to cure. Immediately upon making of the verbal contract, appellee began a siege of the trustees to induce them to purchase appellant's property, which at first they were not inclined to do on account of its location. While these negotiations were going on another and supplementary contract was entered into between appellant and appellee, which is as follows:

"State of Texas, }
County of Harris. }

"Whereas, under date of June 18, 1906, R. E. Luhn made and entered into a written agreement with W. B. Fordtran, which in substance was as follows, to wit: That the said Fordtran was to have the exclusive sale of lots Nos. (1) one, (2) two, south one-half of lot No. (3) three, and the east one-half of lot No. (12) twelve, in block No. (296) two hundred and ninety-six, south side Buffalo Bayou, Houston, Harris County, Texas, together with all improvements thereon situated, for all of which the said R. E. Luhn was to receive the sum of twenty-eight thousand, five hundred dollars ($28,500) net to him, and all over and above said net price realized in the sale of said property by the said Fordtran was to be the profit of said Fordtran for making the sale of said property, which profit the said Luhn was to pay said Fordtran as soon as the sale of said property was consummated, and in said agreement R. E. Luhn was to furnish at his expense a complete abstract of title to said property brought down to date of sale, and to pay all taxes due on said property up to and including the year 1906, and the agreement of June 18, 1906, is here referred to and made a part of this agreement; and,

"Whereas, in said written agreement of June 18, 1906, there is no time fixed in which the said Fordtran should sell the said property; and,

"Whereas, in pursuance with said contract of June 18, 1906, said Fordtran has gone ahead and worked on the sale of said property, and has interested the Shearn Church of Houston, Texas, and believes he has sold said property to the church;

"Now, therefore, for and in consideration of the sum of ten dollars cash in hand paid to R. E. Luhn by the said W. B. Fordtran, the receipt of which is hereby acknowledged, and the further consideration of the services rendered by the said Fordtran, and the services to be rendered by the said Fordtran in selling said property, the time which he shall have in which to sell or complete the sale of the above-described property is hereby extended until such time as the said Fordtran can get the said Shearn Church to agree and bind themselves to buy the above-described property from him. It is agreed, and the said Fordtran hereby binds himself to use his best energies and influence to get the sale of said property closed at as early a date as possible, and in case said property is sold by him before Fordtran disposes of the timber on the eastern portion of the Elijah Votaw tract of land in Montgomery County, Texas, then the said Fordtran is to pay the first note of a series

of two notes given the said R. E. Luhn in part payment for said timber above referred to, out of the profits said Fordtran makes out of the sale of said property on the corner of Main and Clay Streets; but, however, should said Fordtran sell the timber on said land before the sale of this property on Main and Clay Streets is closed with said Shearn Church, then the said Fordtran can pay off said two notes given in part payment of the timber on the Votaw tract of land, less the cash discount of $75 heretofore agreed upon between the said R. E. Luhn and the said W. B. Fordtran.

"W. B. Fordtran agrees and obliges himself to use his best efforts and energies to get the Shearn Church to close this sale or purchase at as early date as possible, and is to have the exclusive sale of said property during the pendency of the sale with the Shearn Church. However, should Shearn Church not buy or close the purchase for the said property on corner of Main and Clay Streets before January 1, 1907, then in that event the said Luhn shall not be liable for any more taxes due on said property other than the pro rata of the taxes due for the year 1907, basing said pro rata according to the date of closing of sale, and said Fordtran agrees, obliges and binds himself to work on no other piece of property for the said Shearn Church other than this property and the adjoining 52 feet belonging to Mr. Van Horn, and binds himself to leave nothing undone in the way of making and closing this sale at as early date as possible.

"Witness our hands at Houston, Texas, this the 14th day of September, 1906.

"R. E. Luhn,
"W. B. Fordtran."

Appellee continued his negotiations with the trustees, making them various offers, some of which contemplated a sale of the entire property, appellee agreeing to buy the improvements from them, but all of the offers contemplating a net price to appellant of $28,500. The trustees were finally brought to look favorably upon the property as a site for their new church, but held off until they had cleared the title to their old property, not wishing to buy until they were assured by a final consummation of the sale thereof of funds to pay for the property. So while appellee's offers were not accepted they were not unconditionally rejected, but were, as it were, held in abeyance waiting the consummation of the sale of their property. Finally this was effected about April 4, 1907, when appellee closed with them at the price of $32,500. This trade appellant refused to carry out, claiming that he had previously canceled appellee's employment. A few days thereafter appellant in person closed the deal with the trustees, and on April 16, 1907, made them a deed, receiving therefor $32,500 for the property. This sale was due entirely to appellee's persistent and laborious efforts, continued without interruption from the time of his first employment up to the final closing of the contract. These negotiations were pending all of the time, and with a prospect of eventual success.

As to the cancellation of the contract between appellant and appellee, appellant testified that it was canceled by him sometime in January. His testimony is not very definite as to this alleged cancellation, but he

does testify positively to writing and mailing a letter to appellee on March 2, 1907, cancelling the contract, which appellee denies ever having received, and he denies positively that the contract was ever canceled or his authority withdrawn by appellant until his refusal to carry out the sale made by appellee on April 4, 1907. The court submitted to the jury only the issue of a mutual cancellation, and on this issue the jury found for appellee.

We find as a fact that if there was ever any attempt to cancel the contract by appellant previous to April 4, 1907, appellee did not agree thereto, but strenuously insisted upon his rights under the contract and proceeded with his negotiations with the trustees thereunder until he finally closed with them as aforesaid on April 4th. This brings us to a consideration of the assignments of error.

The first assignment of error complains of the refusal of the court to instruct the jury to return a verdict for defendant. One ground of this complaint is that appellee did not at any time offer the property to the purchaser on the terms specified in the several agreements. No terms were specified in the agreement except that appellant was to receive net to him $28,500 for the entire property. With that condition only appellee was left free to make such offers as he pleased. There was some evidence that one offer made by appellee was to sell the lots alone, reserving the improvements, for $27,500. It seems that under this offer appellee was to take the improvements for his commission, making up himself the difference between the amount of the offer and $28,500 appellant was to receive. Another witness speaks of this as an offer to sell the entire property for $30,000, appellee personally to buy the house for $2,500. However, there was other evidence as to offers made by appellee, each of which contemplated the payment to appellant of his agreed net price, appellee to take the improvements for his commissions. There was no departure from the terms of the agreement in any of these offers, as in the cases cited by appellant in support of the proposition stated.

The other proposition stated under the first assignment of error is that the uncontroverted evidence established that appellee never produced any purchaser for the property ready, able and willing to take the property under the terms of the contract; this proposition is fully answered by the findings of fact heretofore made—that the sale to Shearn Church for $32,500 was in fact brought about by appellee.

The court did not err in refusing to charge the jury to return a verdict for defendant if they found that he canceled the contract before plaintiff sold the property. The jury were instructed to return a verdict for defendant if they found that there was a mutual agreement between appellant and appellee to cancel the contract before any sale was made. This was correct. By the terms of the agreement of September 14th appellee was given the exclusive right to sell the property, and the time within which he was to have such exclusive right was extended until he could get Shearn Church to agree and bind itself to buy. This contract was upon valuable consideration moving from appellee to appellant, to wit, services already performed, services to be in the future performed, and, what was of more importance, the agreement of appellee not to sell or attempt to sell any other property to Shearn Church. Ten dollars

in cash as a further consideration was also paid by appellee to appellant. It is clear from a reading of this contract that it was not contemplated that appellant should have the right to cancel it at will. We do not mean to say that the time limit "until such time as the said Fordtran can get Shearn Church to agree and bind themselves to buy" is to be taken literally, but certainly so long as the negotiations were going on between appellee and the trustees of the church, with a prospect of an eventual sale, within reasonable limitations as to time, appellant had no right to cancel the contract without the consent of appellee. The contract of September 14th evidently contemplated that appellee was to have until sometime after the beginning of the year 1907 to make the sale, and that some appreciable length of time after the first of January of that year would be allowed. The stipulation as to payment of taxes for part of the year 1907 shows this. The sale was in fact closed in April, 1907, active negotiations being kept up all that time with the prospect of eventual success, as soon as the church people cleared the title to their property.

In these circumstances we are clear that the delay in closing the trade was not unreasonable, and that no other conclusion could be drawn from the evidence. So that the right to cancel the contract by appellant without appellee's consent, which he could only do for unreasonable delay in getting the church people to accept his offer, never arose. The second assignment of error is overruled.

What we have said also disposes of the third, fourth, fifth and sixth assignment of error, which are overruled. We think the evidence did not present the issue of unreasonable delay, in view of the terms of the contract. Ordinarily what is a reasonable time within which an act should be done, like negligence, is a question of fact for the jury, but where no inference of unreasonable delay can be properly drawn from the evidence by a reasonable mind, there is no issue of fact to be submitted to the jury. Such a case is presented here.

The court did not err in charging the jury that "the defendant could not cancel the contract without the consent of plaintiff, as long as plaintiff was engaged in negotiations with the trustees of Shearn Methodist Church, in endeavoring to effect a sale to that church, up to the time defendant sold the property himself." The objections to this charge are that it assumes the controverted fact that the agent had the right, under the contract, to continue his efforts to make the sale up to the time the owner sold the property, and also assumes that in doing so that agent was acting within the time limit for completion of the sale. What we have said on the question of unreasonable delay disposes of both objections. There is no merit in the seventh assignment of error presenting the question.

There was no error in the admission in evidence of what the trustees said to appellee during the negotiations. The testimony tended to show the efforts being made by appellee to sell the property, and also that there was a likelihood that they could eventually be induced to buy. The eighth assignment of error is overruled.

It is hardly within the range of possibility that the jury could have been influenced by the remarks of the court to counsel referred to in the

ninth assignment of error. Certainly the matter is of too trifling a nature to require a reversal of the judgment.

The remaining assignments are overruled without further discussion, which could only be a repetition of what has already been said. There is no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.