**HOUSTON, E. & W. T. RY. CO. v. BROWDER.    (No. 4297.)***

(Commission of Appeals of Texas, Section A. May 12, 1926.)

**1. Appeal and error ⇐1050(1) — Permitting plaintiff to plead and prove oral agreement for rebate under written, unambiguous grading contract to railroad's superintendent held prejudicial error.**

In action against railroad for breach of written grading contract which was complete and free from ambiguity, permitting plaintiff to plead and prove an oral agreement for a rebate to defendant's superintendent *held* prejudicial error as impeaching integrity of superintendent, on whose judgment as to performance of contract plaintiff had agreed to rely and to discredit superintendent's testimony before jury.

**2. Evidence ⇐442(5).**

When written grading contract was complete and unambiguous, alleged oral agreement for rebate is conclusively presumed not to have been entered into.

**3. Judgment ⇐198 — Findings, in action against railroad for breach of grading contract, that plaintiff performed contract, and that he failed to comply with railroad's instructions, held conflicting, and not to support judgment for plaintiff.**

In action against railroad for breach of grading contract, special findings by jury that plaintiff, up to time he was discharged, performed contract in compliance with plans, specifications, and instructions of railroad, and that he failed to follow instructions of superintendent and engineer in certain respects, *held* conflicting, and not to support judgment for plaintiff.

**4. Contracts ⇐261(2) — Contract requiring plaintiff to grade railroad right of way in accordance with instructions, and authorizing termination for failure to properly perform work, authorized railroad to terminate contract without liability to plaintiff on his failure to comply with instructions as to manner of carrying out work.**

Under contract for grading railroad right of way, in accordance with drawings, specifications, or instructions providing that, if in judgment of superintendent of railroad work was not being properly performed, contract might be terminated, failure of plaintiff to comply with instructions as to manner of performing work authorized railroad to terminate contract without any liability to plaintiff.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by F. G. Browder against the Houston, East & West Texas Railway Company. Judgment for plaintiff was affirmed in 265 S. W. 227, and defendant brings error. Reversed and remanded.

Baker, Botts, Parker & Garwood, and Garrison & Watson, all of Houston, for plaintiff in error.

Gill, Jones, Tyler & Potter, of Houston, and Robt. J. Sullivan, of Dayton, for defendant in error.

BISHOP, J. Defendant in error, F. G. Browder, instituted this suit in the district court of Montgomery county against plaintiff in error, Houston, East & West Texas Railway Company, alleging that he was engaged in the performance of work in preparing the roadbed of the railway company for ballast between Humble, Tex., and Napier, Tex., a distance of about 39 miles, under the terms of a written contract of date April 4, 1921, which was pleaded and set out in his petition; that prior to the execution of the written contract, and in negotiations leading up to its execution, it was agreed between him and R. T. Walker, superintendent of the railway company, that he should return as a discount or rebate to the railway company, through said Walker, 10 per cent. of the gross earnings under the contract; that, when the contract was reduced to writing, it did not contain the agreement with reference to the

---

⇐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 26, 1926.

10 per cent. rebate, which rested in parol, but that same was part of the contract under which the work was being performed; and that on October 31, 1921, prior to the completion of the work under the terms of the contract, he was wrongfully discharged by the railroad company from further service thereunder. He sought recovery for damages in the nature of prospective profits he would have earned if he had been permitted to complete the performance of his work under the terms of the contract.

The railway company answered by general demurrer, and specially excepted to that portion of the petition setting up the oral contract with reference to the 10 per cent. rebate. The trial court overruled the general demurrer and this special exception, and, on trial before a jury, over the objection of plaintiff in error railway company, permitted defendant in error to introduce evidence of the oral agreement, and also submitted to the jury a special issue requiring a finding as to whether there was such agreement.

It also answered by general denial. It specially pleaded the terms of the written contract, and alleged that at the time it elected to terminate the contract it did so under the terms thereof, which provided that, if in the judgment of its superintendent the work was not being performed in accordance with the plans, specifications, and instructions given Browder, it should have the right to terminate same. It alleged that Browder had failed to comply with the terms of the contract in that: (a) He failed to follow the instructions of the engineer as to how the dirt he was moving should be placed while working under the contract; (b) he failed to follow the instructions of the superintendent or engineer, conveyed to him in person or through their subordinates, as to how the dumps should be rounded on top; and (c) he secured dirt from places other than those provided by the engineer, and contrary to the engineer's instructions.

The written contract is as follows:

## "Jobbing Contract.

"This agreement, entered into this the 4th day of April, A. D. 1921, between the Houston East & West Texas Railway Company, styled first party, and F. G. Browder, of Cleveland, Tex., styled second party:

### "Article I.

"In consideration, and under the terms and conditions hereinafter stated, the second party will furnish all teams, and drivers, labor, and necessary equipment, and will do such grading work between Humble and Napier necessary for preparing first party's roadbed for ballast, and as first party's engineer may direct. Where work hereunder is to be performed on a daily basis, it is understood that ten hours work shall constitute a day. Work herein undertaken must be begun within ten days from date second party is notified so to do, and it must be diligently prosecuted as requested by first party until completed within not exceeding —— working days from the date work is commenced. All work shall be done in accordance with drawings, specifications, or instructions that may from time to time be given to second party by the first party, which may be hereto attached as an exhibit, or be furnished from time to time hereafter.

"No claim for overtime or force account by the second party or others engaged in this work will be honored or paid by the first party, unless request therefor has been made in writing by the first party's duly authorized representative, and said request has been granted in writing.

### "Article II.

"As consideration for said work, the first party agrees and promises to second party as follows:

"Fifty (50) cents per hour for each combination of team and driver used and twenty-five (25) cents per hour for each slip holder not to exceed one for each three teams worked.

"Where work is performed on a daily basis, and second party is prevented from working a full day, as hereinabove provided for, from any cause whatsoever, then second party shall receive a proportionate amount of the daily rate as the number of hours actually worked bears to the total number of hours representing a day's work.

"Before any payment is made the work shall have been inspected and accepted by first party's duly authorized representative, and, if it is not up to the first party's requirements, it shall be made so by second party at his expense.

"Second party shall furnish satisfactory evidence to first party, if requested to do so, that the work herein undertaken and performed is free from any and all liens for amounts due, or claims to be due for labor performed, or materials or tools furnished second party in the performance of said work.

"Second party expressly agrees to indemnify and save harmless the first party from all claims or demands for labor performed, or to be performed, or materials furnished, for said work.

"If, in the judgment of the first party's superintendent, the work herein undertaken is not being performed by second party, in strict accordance with the plans, specifications, or instructions that may have been given, or if second party does not use due diligence toward completing work in time above specified, then first party shall have the right to terminate this contract and proceed with the work in such manner as it may desire, and second party shall be paid for the proportionate amount of work completed at the time of cancellation of this contract, less any deductions that may have been made to insure first party against loss of time or expense in the completion of this work, and first party shall not be held liable for any loss or damage to second party on account of the cancellation of this contract.

### "Article III.

"It is expressly agreed and understood that the second party and his employees, or others engaged in, on, or about the work, except employés regularly on the pay roll of first party, are in no way agents or representatives of first party, but that second party is an inde-

pendent contractor, and that such persons as may be on or about the work are there at second party's sole risk, and with his permission, and should second party or any of his employés, or others, on or about said work, be killed or injured, or should any property, including stock and teams of second party or of others, be damaged, destroyed, injured, or killed during the progress of said work, the second party expressly assumes sole liability therefor, and hereby agrees to protect and save first party harmless from all claims, demands, or suits, and all expenses or losses resulting therefrom.

"The first party will furnish no transportation for men or materials, teams, or tools for second party as part consideration for this contract, except upon payment of regular tariff rates.

### "Article IV.

"The second party expressly guarantees the workmanship furnished by him in fulfilling this contract to be first class in execution and quality.

"The term 'his' as used herein includes corporations as well as persons and firms.

"Executed in duplicate by the parties hereto, each to have the full force and effect of an original, the day and year first above written. The Houston East & West Texas Railway Company, by G. S. Waid, Vice President and General Manager, F. G. Browder."

On the verdict of the jury on special issues judgment was rendered for Browder, allowing him recovery for wrongful discharge, and this judgment was by the Court of Civil Appeals affirmed. 265 S. W. 227.

[1, 2] The Court of Civil Appeals in its opinion concluded that the trial court erred in overruling the exception to that part of the petition which alleged an oral agreement to return as a rebate 10 per cent. of the gross earnings under the contract, but held that this error "in this case worked no prejudice to" plaintiff in error railway company, and for this reason "cannot work a reversal of the judgment." On this holding error is here assigned. The written contract, upon the breach of which defendant in error relies to sustain his judgment, is complete and free from ambiguity. It excludes the parol agreement alleged, and, as this agreement in law is conclusively presumed not to have been entered into, it is wholly immaterial to any issue presented in this case. In his pleadings, the defendant in error alleged that he had drawn and delivered checks to Walker, the superintendent, in payment of the 10 per cent. rebate. In a supplemental petition, he made the following allegations, to wit:

"For further special plea in this behalf, and subject to the foregoing exceptions and denial, this plaintiff says that, if R. T. Walker failed or refused, for any reason, to pay as he should have done, to defendant, railway company, the money paid to him by this plaintiff, F. G. Browder, and if said R. T. Walker perpetrated any fraud upon the defendant, as alleged by said railway company, then this plaintiff says that this plaintiff was in no manner concerned with said fraud, nor did plaintiff participate therein, and plaintiff had no knowledge of same, and that plaintiff was referred to said Walker by Mr. G. S. Waid; that he dealt in good faith with Mr. Walker as an officer and agent of the defendant railway company, and presumed, and had a right to presume, that all funds received by Walker would be by him paid over promptly and accounted for to defendant, railway company, in whose employ Walker then was, and these facts plaintiff stands ready to verify."

There is no allegation by the railway company that its superintendent, Walker, had perpetrated fraud on it as is alleged in the above-quoted plea. The court not only permitted the defendant in error to plead this oral agreement as part of his cause of action, but also, over the objection of plaintiff in error, permitted evidence thereunder, and required the jury to render verdict on the issue so presented. We think the injection of this immaterial and false issue tended to impeach the honor and integrity of the superintendent, Walker, upon whose judgment the defendant in error in his written contract had agreed to rely as to whether he was performing his work in strict accordance with its terms. It also had the effect to discredit the testimony of Walker before the jury. We think placing before the jury this illegal oral agreement was highly prejudicial to the legal rights of the plaintiff in error, and that no judgment obtained by this unfair means should be allowed to stand.

[3] In answer to a special issue submitted to them, the jury found that Browder, up to the time he was discharged, performed said contract in compliance with the plans, drawings, specifications, and instructions of the railway company, its servants, agents, and employés. In answer to other special issues submitted, they found that Browder failed to follow the instructions of the engineer as to how the dirt that he was moving should be placed while working under the contract; that he had failed to follow the instructions of the superintendent or engineer conveyed to him in person, or through their subordinates, as to how the dumps should be rounded on the top while working under the contract; and that he did, while working under the contract, secure dirt from places other than those provided by the engineer, and contrary to the engineer's instructions.

[4] Browder agreed by the express terms of his contract with the railway company that all work should be done in accordance with drawings, specifications, or instructions that might be given him from time to time by the railway company, and that if, in the judgment of the superintendent of the railway company, his work was not being performed in strict accordance with the plans, specifications, or instructions given him, the railway company should have the right to terminate the contract, and that it should not be held liable for any loss or damage to him on ac-

count of such cancellation. This contract clearly contemplated that the dirt moved by Browder in preparing the roadbed of the railway company for ballast should be placed as directed by its engineer, and his failure to so place it was a violation of his agreement to do all his work in strict accordance with the instructions so given. Under this contract the railway company also had the right to have the dumps rounded on the top according to the instructions given Browder by its "superintendent or engineer, conveyed to him in person, or through their subordinates." His failure to comply with instructions so given, under the terms of his contract, gave to the railway company the right to terminate the contract without any liability to Browder for loss or damage caused him by reason of its exercising its right to terminate the contract of employment. The same may be said of the right of the railway company to have Browder secure dirt from places which its engineer might designate. The evidence does not warrant a finding by the trial court that the railway company had given to any person other than an engineer the authority to instruct Browder how the dirt that he was moving should be placed or in what places the dirt should be secured. Under these specific findings the trial court should have rendered judgment for plaintiff in error had it not been that these findings were in conflict with the finding that Browder performed the contract up to the time he was discharged in compliance with the plans, drawings, specifications, and instructions of the railway company, its servants, agents, and employés. By reason of this conflict no judgment should have been rendered on the verdict.

We recommend that both judgments be reversed and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.