## LAKESIDE PARK, Inc., v. DR. PEPPER BOTTLING CO.

### No. 12561.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 14, 1931.

Bullington, Humphrey & King, of Wichita Falls, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, and Donald & Donald, of Bowie, for appellee.

CONNER, C. J.

This is an appeal from a judgment in favor of the Dr. Pepper Bottling Company against the Lakeside Park, Inc., of Wichita Falls, in the sum of $6,747.65 for alleged damages caused by a breach of a concession contract executed by the appellant Lakeside Park, Inc.

With some immaterial objections, appellee concurs in appellant's statement of the material facts of this case, which we will accordingly adopt, to wit:

In June, 1928, the American Amusement Company, a Texas corporation, had acquired a lease on certain properties situated near Wichita Falls, Tex., and on the shores of Lake Wichita, which it intended to use and operate as an amusement park. The premises in question had been used for amusement purposes for a number of years prior to this date, but it was the plan and intention of the American Amusement Company to construct a number of additions to the park and to operate it as an amusement park.

Numerous contracts were entered into by the American Amusement Company with various people covering concessions in this park. Among such concession contracts was the contract sued on in this case, and the contract covered the right to sell bottled drinks within the boundaries of the park.

The contract in question was effective from December 31, 1928. Under and by virtue of the terms of this contract the American Amusement Company obligated itself, as conditions precedent, to do a number of things, namely: (1) To construct a board walk, (2) to build a large coaster ride, and (3) to operate a dance hall. The contract provided that in the event these conditions were complied with that the Nehi Bottling Company (now the Dr. Pepper Bottling Company) should be bound and obligated to pay to the American Amusement Company the sum of $4,000, which was "payment for the first year" and was "to be a binding obligation upon the Nehi Bottling Company conditioned upon" the American Amusement Company constructing the park in accordance with the stipulations "hereinabove mentioned and set forth," which was the building of the board walk, the construction of a coaster ride, and the operation of a dance hall.

The contract further provided that the Nehi Bottling Company was given the option to surrender the lease at the expiration of 1929 or the option to continue the contract in force and effect, and provided that in the event the contract was continued in force and effect after the first year, then certain other obligations rested upon both parties to the contract.

The contract called for the payment of the $4,000 in the following manner: Ten per cent., or $400, at the time of the execution of the lease; $600 on May 1, 1929; $1,000 on July 5, 1929; $1,000 on August 5, 1929; and the remaining $1,000 on September 1, 1929.

The facts in this case are undisputed that the $400 cash consideration was paid. The May 1 payment of $600 was made; the $1,000 payment on July 5th was made; the $1,000 payment on August 5th was made. The appellee failed to pay the $1,000 due September 1, and ignored the demand of the appellant for this $1,000. No payment was made January 1, 1930; and February 1, 1930, the contract was terminated by the appellant by reason of the nonpayment of the September and January, 1930, payments.

When demand was made on appellee to pay the $1,000 due under the terms of the contract on September 1, 1929, the appellee contended that this payment was not due because the park was not opened on May 25, 1929, and because a number of the concessions, including the coaster ride, closed down on September 8, 1929. Appellee then contended, as contended for in its petition, that there was an obligation on the part of appellant to keep the park open for a full five months in 1929, and contended that it was entitled to a rebate of so much per day for each day the park was not kept open in the sense that all concessions were kept operating.

The proof is also undisputed that the park never closed except in the sense that some of the concessions closed in September, 1929. It was open the entire year for certain purposes, such as fishing, boating, and dancing. The park did not have its formal opening on May 25th. This did not take place until June 12th. The president of the appellee admitted, however, that L. L. Allbritton, the general manager of appellant, tendered back to him the rental due and that after the failure of the park to open he made the July 5th payment and the August 5th payment without protest.

The case was submitted to a jury upon special issues, which, together with their answers, so far as we think necessary to develop, are as follows:

"1. Did the plaintiff owe the defendant any sum of money as rents for the year 1929, at the time defendants, its agents, servants or employees, denied plaintiff the right to continue to operate under the contract in question? Answer: No.

"2. Had the plaintiff tendered to the defendant all rents then due for the year 1930, at the time of its eviction from the premises known as 'Lakeside Park' under and by virtue of the terms of the contract in question? Answer: Yes."

"4. Find from a preponderance of the testimony what amount of money, if any, would reasonably compensate the plaintiff for damages in loss of profits, if any, which plaintiff would have earned under the contract in question, except for the breach of the same on the part of the defendant, if the defendant breached the same? Answer: $5823.00.

"5. If you have answered issue No. 1 'No' and issue No. 2 'Yes,' then answer: Find from a preponderance of the testimony what amount of money, if any, would reasonably compensate the plaintiff for damages, if any, by reason of the construction and installation of the ice-boxes on the premises in question? Answer: $252.00."

The plaintiff requested the following special issues, which were given and answered as follows:

"1. If you have answered special issue No. 1 in the court's main charge 'No,' then answer the following issue: Did the plaintiff pay to the defendant more rent for the year 1929 than was due under the terms of the contracts? Answer: Yes.

"2. If you have answered plaintiff's specially requested issue No. 1 in the affirmative, then answer the following issue: How much rent, if any, did the plaintiff pay to the defendant for the year 1929 in excess of the rent due under the terms of the contract in question? Answer: $672.65."

The defendant also requested issues, which were given and answered as follows:

"1. Find from a preponderance of the evidence whether from the first day of May, 1929, to September 30, 1929, Lakeside Park, Inc., was a place where the general public would, and did, gather for the purpose of amusement? Answer: No.

"2. Find from a preponderance of the evidence whether from the first day of May, 1929, to the 30th day of September, 1929, Lakeside Park, Inc. was in a condition which a park usually is to induce the general public to attend. Answer: No.

"3. Find from a preponderance of the evidence whether plaintiff waived the failure to have the board walk, the concession booths, and the coaster ride completed and ready for use May 25, 1929. Answer: No.

"4. Find from a preponderance of the evidence if plaintiff would have sold as much cold drinks per day from September 8, 1929, to November 12, 1929, as plaintiff sold per day from June 12, 1929, to September 8, 1929. Answer: No.

"5. Find from a preponderance of the evidence whether Lakeside Park, Inc. offered to Dr. Pepper Bottling Company a contract giving them the cold drink concession rights in the park for as long as they wanted it, at a price of $3500.00 a year rental. Answer: No."

The contract contained, among other provisions, the following, to wit:

"In connection herewith the right is hereby specifically granted to the party of the second part to surrender this lease at the expiration of any year, conditioned that such notice be given to the party of the first part prior to January 1st of such succeeding year, and in the event the party of the second part desires to continue this contract in force and

effect, the conditions and stipulations as hereinafter set forth shall be complied with.

"In connection herewith the terms and conditions shall only apply in the event this contract is kept in force and effect for a period longer than one year, but the four thousand dollars ($4,000.00) payment for the first year is to be a binding obligation upon the party of the second part, conditioned upon the party of the first part constructing and operating said amusement park in conformity with the stipulations hereinabove mentioned and set forth."

 Appellant presents but two questions by its assignments of error. It first insists that the court erred in refusing to sustain appellant's general demurrer to plaintiff's petition. It is insisted that the allegations of the petition are variant from and in conflict with the terms of the contract, and therefore state no cause of action. The petition refers to the contract as attached thereto as an exhibit. In such case we think the fact that the pleader in his petition alleges the legal effect of the contract at variance with and not justified by proper legal effect of the contract itself does not render the petition subject to demurrer. In such case the court will construe the contract and if its proper legal effect, when applied to the facts alleged, confers a right of recovery, the general demurrer should be overruled. It may be said from the several clauses of the contract that the contract was not mutual, in that plaintiff was given the unconditional privilege of withdrawing from the contract upon conditions stated, and hence that the Lakeside Park Company was entitled to a like privilege. We will not discuss or determine whether or not the contract was unenforceable for want of mutuality, as that question has not been mentioned or discussed in the briefs. For if it be admitted that the contract as originally executed was unenforceable for want of mutuality, it was at least executed and enforceable for the first year by the payment on appellee's part of the stated consideration, and whether after the year 1929 the contract authorized appellant to withdraw therefrom will depend upon the facts and proper construction of the contract.

We think, however, that appellant's objections to the special issues submitted by the court should have been sustained. It seems clear that in order to determine issues 1 and 2 by the court, and 1 and 2 given at the request of the plaintiff, it was necessary for the jury to consider and determine the legal effect of the contract. This was the province of the court and not of the jury. To illustrate, the function of the jury was to ascertain from the evidence the controverted facts, including the actual amounts paid by the plaintiff for the year 1929. An application of the findings by the court to the terms and legal effect of the contract relating to this issue would determine the question whether or not plaintiff in fact had paid or was due for the year 1929.

We do not think it can be said that the contract is absolute for the full term of five years. By its terms not only appellee but also appellant had an option to terminate the contract under certain conditions, and the question of whether or not those conditions existed were questions of fact to be determined by the jury.

We note further that the jury found that the Lakeside Park Company was in no condition at times to induce the general public to attend. The question of what effect, if any, such a finding will have upon the rights of the parties is not presented, and therefore will not be discussed.

For the error of the court, however, in so framing his special issues as to submit to the jury's determination the meaning of the contract and of its proper effect upon the facts shown, we think the judgment must be reversed and the cause remanded for another trial, and it is so ordered. See Simpkins on Contracts, 494; 2 Elliott on Contracts, 855, 858; 6 R. C. L. 862, 863; 13 C. J. 796; Hanover Co. v. Hines, 11 S.W.(2d) 621, by this court, affirmed by the Supreme Court on January 22, 1930, 23 S.W.(2d) 289.