**HOME READER SERVICE, INC.,**
Appellant,

v.

**Charles J. GRAPPI, Appellee.**

No. 17329.

Court of Civil Appeals of Texas.

Dallas.

Sept. 29, 1969.

Rehearing Denied Oct. 31, 1969.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, for appellant.

Wm. Andress, Jr., Andress, Woodgate & Hartt, Dallas, for appellee.

BATEMAN, Justice.

Appellee sued for damages for wrongful termination of his written contract with

appellant, and was awarded judgment on a jury verdict.

The controlling issue is whether appellant's termination of the contract was without cause, as found by the jury, or whether appellee's conduct had furnished ample cause as a matter of law. We are in accord with the latter view and hold that appellant's motion for judgment notwithstanding the verdict should have been granted.

The appellant was in the business of selling magazines and other periodicals on a monthly installment payment plan. Appellee had been manager of appellant's branch office in Dallas, Texas, and in the latter part of 1960 appellant changed its method of doing business and, instead of having its own branch offices, entered into franchise contracts with individuals. It made such a contract with appellee dated November 4, 1960. The contract provided *inter alia* that appellee should remit promptly upon collection and send his collection reports and remittances to appellant on Tuesday, Thursday and Saturday of each week, or immediately following the collection of $1,000, "whichever is the more frequent," unless otherwise instructed in writing by appellant.

The evidence showed, and appellee concedes, that his reports and remittances were not made at the times specified in the contract, that they were sent in at irregular times and were often late, sometimes by several weeks. It was also shown without dispute that some of the reports of collections were not accompanied by remittances, that several of appellee's checks were returned because of insufficient funds, and that in the period from July 24, 1961 until the time of cancellation of the contract no reports or remittances were received by appellant. Appellant took the position that these departures constituted breaches of the franchise contract giving it the right to terminate that contract immediately, under Section 14(a) thereof which provides, in part:

However, should DEALER * * * fail to keep or fully perform any of the terms of this agreement on his part to be kept, then and in any such event, HRS [appellant] may immediately and forthwith terminate this agreement by written notice sent to DEALER by mail or telegraph. Such termination shall be deemed a termination for cause and shall become effective immediately upon mailing of the aforesaid notice or delivery of same to a telegraph office.

Appellee complained from time to time that he was losing money in the collection of appellant's accounts under another contract, entered into by the parties simultaneously with the execution of the franchise contract, and testified that he had demanded of appellant an audit of the collection business he was doing, but that these demands had been ignored by appellant. He testified that on or about August 14, 1961 he sent a telegram to appellant's home office demanding that it have a representative in his office by noon of August 17, 1961, to make proper accounting with him and to reimburse him for losses and debts incurred by him in maintaining the business. He also threatened to terminate the collection contract. On August 16, 1961, shortly before noon, a temporary receiver appointed on the petition of appellant took possession of appellee's records, and later the same day appellee received a telegram from appellant terminating both contracts. There was no evidence to show when this telegram was delivered to the telegraph office for transmission to appellee. Appellee complains only of the cancellation of the franchise contract.

In response to the three special issues submitted, the jury found (1) that appellant did not have good cause for terminating the franchise contract; (2) that appellee sustained financial damage as a direct result of such termination; and (3) that $6,000 would reasonably compensate appellee for such damage.

In its third point of error on appeal appellant complains of the overruling of its

motion for judgment *non obstante veredicto* because "the undisputed evidence showed as a matter of law that Appellant not only had 'cause' but also 'good cause' for the termination of the relevant franchise contract." By its eighth, ninth and tenth points of error appellant says that there was no evidence and insufficient evidence to support the said first finding and that it was contrary to the great weight and preponderance of the evidence.

Special Issue No. 1 and the instruction given in connection with it, together with the jury's answer, were as follows:

> Do you find, from a preponderance of the evidence, that on or about August 15, 1961, Home Readers Service, Inc. did not have good cause for terminating the franchise contract in question with Charles J. Grappi?

> Answer 'It did not' or 'It did.'

> In connection with the preceding idsue, you are instructed that the term 'good cause' means the failure of a party to substantially perform duties in accordance with the terms of the franchise contract in question.

> ANSWER: It did not.

■ The contract in clear and unambiguous terms gave appellant the right to terminate it immediately for failure of appellee "to keep or fully perform any of the terms of this agreement on his part to be kept." One of those terms was that appellee should report and remit promptly to appellant upon collection of funds due it, forwarding such reports and remittances on certain specified days of the week. Appellee admittedly failed to perform the latter term of the agreement. What issue of fact, then, was there to submit to the jury? Rule 272, Vernon's Texas Rule of Civil Procedure, provides that only controverted questions of fact shall be submitted. In our opinion there was no such question of fact for the jury to determine. The existence of conditions relied on by appellant

as "cause" or grounds for the termination was established without dispute—even conceded by appellee. The evidence was "harmonious and consistent, and the circumstances permit of but one conclusion." James v. Missouri-Kansas-Texas R. Co. of Texas, 182 S.W.2d 921, 922 (Tex.Civ.App., Waco 1944, writ ref'd), citing Wininger v. Fort Worth & D.C.Ry. Co., 105 Tex. 56, 143 S.W. 1150 (1912). There remained only the question of law as to whether such conditions supplied lawful grounds for termination. Lakeside Park v. Dr. Pepper Bottling Co., 44 S.W.2d 1023 (Tex.Civ.App., Fort Worth 1931, no writ). See also Sanger v. Slayden, 7 Tex.Civ.App. 605, 26 S.W. 847 (Austin 1894, no writ), and Luhn v. Fordtran, 53 Tex.Civ.App. 148, 115 S.W. 667, 670 (Galveston 1909, writ ref'd).

If, however, it could be said that there was a controverted fact question as to whether the immediate termination was justified, then it would have to be as to whether the parties intended, when they made the contract, that failure of appellee to perform these particular duties would entitle appellant to terminate the contract. Appellee assumed the burden of establishing that they did not so intend. In the absence of proof to the contrary (and we find none) we must assume that the parties meant what they said by their contract. There is nothing in the evidence to indicate that at the time of making the contract the parties considered these requirements (of prompt reports and remittances at certain times) to be so trivial or petty that they could be disregarded by appellee with impunity and without fear of loss of his right to continue to operate under the contract. In our opinion, appellee failed to carry his burden and in the light of the entire record appellant had, as a matter of law, ample cause and the clear right to terminate the contract immediately without liability for any loss or damage appellee might have suffered thereby. Houston, E. & W. T. Ry. Co. v. Browder, 283 S.W. 154 (Tex.Com.App.1926, holding approved);

Woodard v. General Motors Corporation, 298 F.2d 121, 126 (5th Cir. 1962).

■ A contract provision for termination by either party "when fairly entered into, will be enforced if not contrary to equity and good conscience." Maddox Motor Co. v. Ford Motor Co., 23 S.W.2d 333, 338 (Tex.Com.App.1930, holding approved); 17A C.J.S. Contracts § 399, pp. 481 et seq. We find nothing in this record to indicate a lack of good faith on the part of appellant or that the exercise of the contractual right to terminate would be inequitable or opposed to good conscience.

■ Appellee says that appellant's assertion of a right to terminate immediately on the grounds stated is insupportable because appellant waived such right by accepting quite a number of his late and irregular payments and reports without warning him that unless he more strictly complied with the contract it would be terminated. We do not agree. If it had been shown that there had been such a long continued practice of permitting these delinquencies as to indicate acquiescence therein, and there had been no contractual provision to the contrary, a case of waiver might have been made, but such are not the facts of this case. The evidence here was that appellant merely exercised patience and forbearance with appellee's noncompliance for several months, with nothing in the evidence to indicate an intention on the part of appellant thereby to waive its contractual right to terminate. As said in Bishop v. T. Ryan Const. Co., 106 Wash. 254, 180 p. 126, 131 (1919): "It was but the exercise of common decency, and certainly the law will be slow in penalizing such an act." See also 17A C.J.S. Contracts § 405, p. 493, where it is said that:

"* * * a provision in a contract for cancellation may be resorted to after a continuing breach, although at first the party entitled to cancel chooses to regard the contract as subsisting."

Moreover, the contract itself, in Section 17, provides:

No waiver by either party of any breach hereof shall be deemed a waiver of any preceding or succeeding breach hereof.

■ In his fourth counterpoint appellee argues that appellant filed receivership proceedings and served him with process therein before complying with the contractual requirement of mailed or telegraphic notice, and that the termination was therefore wrongful. We do not agree. The fact that the telegram was actually delivered to appellee a few hours after his records were seized by the temporary receiver does not prove that the legal action against appellee was commenced prior to the delivery of the telegram to the telegraph office, which was the time the contract provided the termination would become effective. Even if it did, the time lag would have been so insignificant as to invoke the doctrine of *de minimis non curat lex*.

In our opinion, an instructed verdict would have been proper and appellant was entitled to have judgment rendered in its favor notwithstanding the verdict. Rule 301, T.R.C.P. The third, eighth, ninth and tenth points of error are sustained.

By its fourth and fifth points of error appellant complains of the use by the court of the word "good" immediately preceding the word "cause" in Special Issue No. 1 as imposing on appellant a greater burden than was imposed by the contract in question. Appellant says in its sixth point that the rendition of judgment on the jury's answer to Special Issue No. 1 was erroneous because as a matter of law it "was entitled to terminate the franchise contract for less than good cause."

If we had overruled appellant's third point of error, thereby holding that there was a jury issue on the question of whether appellant had a right to terminate the contract, we would nevertheless regard

these criticisms of the issue as invalid, or at least of not sufficient moment to constitute reversible error, Rule 434, T.R.C.P., and would also overrule points of error 4, 5 and 6. However, as we have sustained the third point it is unnecessary for us to pass on the fourth, fifth and sixth.

■ By its first two points of error the appellant complains of the overruling of its motion for instructed verdict made after appellee had rested and before presentation of any evidence by appellant. Appellant waived these points by proceeding to introduce evidence in support of its defenses. 56 Tex.Jur.2d, Trial, § 205, p. 545; Travelers Ins. Co. v. Arnold, 378 S.W.2d 78 (Tex.Civ.App., Dallas 1964, no writ). The points are therefore overruled.

By its eleventh, twelfth and thirteenth points of error appellant contends that there was no evidence and insufficient evidence to support the answer of the jury to Special Issue No. 3, and that such finding of $6,000 damages was contrary to the great weight and preponderance of the evidence. We have searched the record and are unable to find any evidence of probative force to support this finding.

■ The only evidence offered by appellee was his own testimony that in the preceding year, 1960, during which period he was acting as appellant's employed manager, he made "around $15,000." What his salary and possibly other emoluments may have amounted to in 1960 while acting as branch manager would constitute no proof, in our opinion, of what his net earnings would have been in the year 1961 while operating his own office as a franchised dealer. Therefore, we sustain points of error Nos. 11, 12 and 13.

In its seventh point of error appellant says the court erred in rendering judgment against it for $6,000 because appellant had the right under the contract to terminate it without cause upon sixty days' written notice and, since appellee's only testimony concerning damages was that he had made approximately $15,000 during the preceding year while acting as branch manager for appellant, his maximum recovery under any construction of the evidence could not exceed one-sixth of $15,000 or $2,500.

This seventh point of error presupposes a holding that appellee's testimony that he had made around $15,000 the previous year would constitute evidence of what he would subsequently earn in a different capacity. There is sound authority for appellant's theory that in any event appellee's recoverable damages should be limited to the earnings which would have accrued to him during the sixty-day period provided for notice of termination without cause. In re Petroleum Carriers Co., 121 F.Supp. 520, 525 (U.S.Dist.Ct., Minn.1954); Massachusetts Gas & Electric Light Supply Corp. v. V-M Corporation, 387 F.2d 605, 607 (1st Cir. 1967). However, since we have held that there was no evidence of loss of earnings in 1961 and subsequent years, and especially since we have also held that appellant had the right to terminate the contract immediately for cause, it is not necessary for us to pass on this seventh point.

It appears to us that the case has been fully developed and that the trial court should have granted appellant's motion for judgment notwithstanding the verdict. Accordingly, we reverse and render judgment that appellee take nothing. Rule 434, T.R. C.P.

Reversed and rendered.