# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00059-CV

**Permit Partners, LLC; and David Cancialosi, Appellants**

**v.**

**Heidi Sauer, Appellee**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-003996, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves competing claims for breach of a mediated settlement agreement (MSA). Appellee Heidi Sauer claimed that her former employer, Permit Partners, LLC, and supervisor, David Cancialosi (collectively, Permit Partners) breached the MSA by failing to timely close on the agreement. Per the MSA, closing required Permit Partners to make the first of six settlement payments and execute a release of its claims against Sauer. Permit Partners claimed that Sauer breached the MSA by disclosing its confidential contents in her court pleadings. After a bench trial, the court rendered judgment awarding Sauer damages and attorney's fees and ordering that Permit Partners take nothing. We reverse the portion of the judgment awarding Sauer attorney's fees against Permit Partners, LLC. We otherwise affirm the trial court's judgment.

## BACKGROUND

Permit Partners, LLC, a permitting and code-compliance company, and Cancialosi sued Sauer after she allegedly refused to return her company-issued laptop containing proprietary information when her employment with the company ceased. Permit Partners sued Sauer for breach of contract and sought a declaratory judgment, damages, and attorney's fees. Sauer filed a counterclaim, asserting claims against Permit Partners for breach of contract, sexual harassment, and intentional infliction of emotional distress.

While the cause was pending, the parties mediated their dispute and executed the MSA on June 28, 2018. The MSA required Permit Partners to pay Sauer $30,000, in six equal monthly payments. It required a closing on or before August 1, by which time Permit Partners was to make the first of the six required payments and both parties were to execute "a full, complete and mutual release of all claims of any type whatsoever that have been or could be asserted by either side against the other in the above-referenced proceeding [the present lawsuit]." The MSA also required the parties to "maintain confidentiality as to the terms of [the MSA] . . . except as required by law."

On August 1, Permit Partners presented Sauer with a mutual release of claims that it drafted, which Sauer signed and tendered to Permit Partners for its signature. When Permit Partners did not make the first required payment or execute the release of claims, Sauer filed her third amended counterclaim, in which she added a claim against Permit Partners for alleged breach of the MSA by failing to dismiss its lawsuit and tender the required payment.

Permit Partners then amended its petition, adding a claim that Sauer breached the MSA by disclosing its payment terms in violation of its confidentiality provision when she revealed those terms in her filed counterclaim. Permit Partners sought a declaration that, as a

2

result of Sauer's breach, its "payment obligations under the MSA have ceased." Permit Partners also added a fraud claim, alleging that Sauer "knowingly and intentionally failed to disclose that she had filed a wage-and-hour dispute with the DOL [Department of Labor] prior to negotiating [the MSA]," which induced it to execute the MSA. Both Sauer and Permit Partners filed motions for summary judgment, which the trial court denied.

The parties subsequently by Rule 11 agreement waived a jury trial and provided that the bench trial would be limited to the claims related to the MSA and that all evidence would be documentary only. After trial, the trial court rendered a final judgment in Sauer's favor, determining that she was entitled to recover from Permit Partners under the MSA and awarding her $30,000 in damages and $12,606 in attorney's fees (plus more in the event of unsuccessful appeals by Permit Partners). The trial court issued amended findings of fact and conclusions of law after Permit Partners filed objections to the original findings and conclusions. In part, the trial court determined that Permit Partners "breached the MSA by failing to make the required payment on August 1, 2018" and that Sauer "performed on and did not breach the MSA." The trial court rejected Permit Partners's request for a declaration that Permit Partners's payment obligations under the MSA had ceased. Permit Partners filed a motion for new trial, which the trial court denied.

On appeal, Permit Partners contends that the trial court erred in rendering a judgment in favor of Sauer on her breach-of-contract claim for two independent reasons. In addition, Permit Partners challenges the trial court's award of attorney's fees to Sauer.

## DISCUSSION

### *The trial court's breach-of-contract findings*

In its first issue, Permit Partners contends that the trial court erred in concluding that Sauer did not breach the MSA[1] and, consequently, in failing to declare that Permit Partners's payment obligation under the MSA had ceased due to Sauer's breach. Specifically, Permit Partners contends that the undisputed evidence establishes that Sauer breached the MSA by disclosing its contents and that such breach released Permit Partners from its payment obligations, as specifically provided in the MSA:

> The parties agree to maintain confidentiality as to the terms of this settlement agreement, except as required by law or for professional legal or accounting advice. The parties also mutually agree not to disparage each other. **If Defendant [Sauer] violates this provision, then the Plaintiffs' [Permit Partners's] payment obligation under this agreement ceases.**

(Emphasis added.)

When the terms of a contract are clear and unambiguous and the facts concerning breach or performance are undisputed or conclusively established, the trial court decides, as a matter of law, whether the facts show performance or breach. *See Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868–69 (Tex. App.—Austin 2001, pet. denied); *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Here, Permit Partners argues that the MSA unambiguously required the parties to keep its terms confidential, and that the undisputed evidence establishes that Sauer disclosed material terms of the MSA (i.e., the total settlement amount and the schedule of payments) in her court filings, which are public records. *See* Tex. R. Civ. P. 76a (providing that "court records . . . are presumed

---

[1] The trial court's relevant conclusion of law provided, "Defendant [Sauer] performed on and did not breach the MSA."

4

to be open to the general public" and definition of "court records" includes "all documents of any nature filed in connection with any matter before any civil court"). Permit Partners points out that under notice-pleading requirements in Texas, Sauer could have adequately pleaded her claim for breach of contract without disclosing the MSA's payment terms. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017) ("Under the [fair-notice standard for pleadings], courts consider whether the opposing party 'can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.'" (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000))). Permit Partners also suggests that under the Rules of Civil Procedure, Sauer could have requested permission to file the MSA under seal, *see* Tex. R. Civ. P. 76a (outlining procedure and standard for sealing court records), but did not.

In response, Sauer contends that the trial court "correctly found that she performed on and did not breach the MSA," including the agreement's confidentiality requirement. Alternatively, Sauer argues that even if she did breach the MSA's confidentiality requirement, her claim for damages is not forfeited because the findings and the evidence establish that Permit Partners breached the MSA first when it failed to make the first payment as required on August 1, 2018. In effect, Sauer argues that the forfeiture provision in the MSA, on which Permit Partners relies, includes an exception for Permit Partners's prior material breach.

In construing a contract, our primary concern is to ascertain the true intentions of the parties as expressed in the contract itself. *Plains Expl. & Prod. Co. v. Torch Energy Advisors, Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). In doing so, we must favor an interpretation that gives effect to each part of the agreement so that none of the provisions will be rendered meaningless. *Id.* Although generally enforceable, forfeiture provisions are not favored in the

5

law and are thus strictly construed to avoid forfeiture. *See In re Marriage of I.C. and Q.C.*, 552 S.W.3d 291, 296 (Tex. App.—Dallas 2016), *aff'd*, 551 S.W.3d 119 (Tex. 2018) (upholding appellate and trial courts' enforcement of no-contest forfeiture clause in contract that was unambiguous and provided "clear consequences"—i.e., loss of contractual right to payment—if party violated provision); *Dewhurst v. Gulf Marine Inst. of Tech.*, 55 S.W.3d 91, 99–100 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied) (noting rule of contract construction that forfeiture provision must be clear and unambiguous for court to enforce it). "[W]here equities are shown which justify a continuation of the contract rather than forfeiture of it, the forfeiture will be prevented." *W.W. Laubach Tr. v. Georgetown Corp.*, 80 S.W.3d 149, 157 (Tex. App.—Austin 2002, pet. denied) (quoting *T-Anchor Corp. v. Travarillo Assocs.*, 529 S.W.2d 622, 627 (Tex. App.—Amarillo 1975, no writ)); *see Home Reader Serv., Inc. v. Grappi*, 446 S.W.2d 95, 97–99 (Tex. App.—Dallas 1969, writ ref'd n.r.e.) (noting that contract provision for termination of contract by either party, when fairly entered into, "will be enforced if not contrary to equity and good conscience").

Applying these principles here, we conclude that implicit in the MSA's forfeiture provision is an exception for just cause based on prior breach. That is, even if Sauer violates the confidentiality provision, a forfeiture results only when Permit Partners has, at the time, complied with its material obligations under the MSA. *See Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 848 (Tex. App.—Dallas 2008, no pet.) (holding that because appellant's failure to make timely payment under settlement agreement occurred before appellee's alleged breach of agreement's confidentiality provision by attaching it to its pleadings, appellee was excused from further performance, and affirming summary judgment in favor of appellee that awarded damages in amount of unpaid settlement payments). The record conclusively shows that Permit

Partners breached the MSA by failing to make its first required payment on August 1, 2018, and execute the mutual release of claims, which release the trial court found Sauer had executed.[2] The evidence also conclusively shows that Sauer's alleged unlawful "disclosure" of the MSA's contents occurred on August 6, 2018, when she filed her third amended counterclaim, adding for the first time a claim for Permit Partners's breach of the MSA. Because Permit Partners had materially breached the MSA before Sauer filed her third amended counterclaim, Sauer's filing—even if a breach of the MSA—does not result in a forfeiture of her right to enforce Permit Partners's payment obligations under the MSA. *See id.* at 848. To hold otherwise would be "contrary to equity and good conscience." *See Grappi*, 446 S.W.2d at 99.

In reply, Permit Partners contends that its own prior material breach of the MSA, even if proven, has no impact on the issue of whether Sauer forfeited her right to enforce Permit Partners's payment obligations under the MSA. In support of this assertion, Permit Partners argues that because Sauer elected to "continue the MSA and su[ed] to receive [its] benefits," she may not rely on the prior-material-breach doctrine to argue that her alleged breach of the

---

[2] While the trial court did not make an express finding that Permit Partners's breach was material, we imply such a finding from its judgment and uphold the finding if legally and factually sufficient evidence supports it. *See Pulley v. Milberger*, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied). Mutual release of the parties' claims and Permit Partners's agreement to make the specified settlement payments were the essence of the MSA, which expressly required the parties to "sign a full, complete and mutual release of all claims" at closing, which was to "occur on or before August 1, 2018." Permit Partners's first payment was also to be made on or before closing. Permit Partners's failure to timely pay Sauer the agreed-upon amount in settlement of her claims and to release its claims against her deprived her of the benefit of that agreement. On this record, we conclude that the evidence was legally and factually sufficient to support the trial court's implied finding that Permit Partners's breach was material. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam) (outlining several factors significant in determining whether breach is material, including "the extent to which the injured party will be deprived of the benefit which he reasonably expected," and holding that appellee committed material breach as matter of law).

confidentiality requirement was excused. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). Specifically, Permit Partners contends that by signing the Rule 11 agreement to limit the issues at trial to only those concerning the MSA and by suing to receive the benefits of the MSA, Sauer elected to treat the contract as continuing after Permit Partners's breach and therefore cannot now claim to be excused from her own obligation to perform under the contract. *See Long Trs. v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (per curiam) (noting that "party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part" (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982))). However, we need not decide whether Sauer's alleged breach of the confidentiality requirement was *excused* by Permit Partners's prior material breach or whether, instead, an exception to the prior-material-breach doctrine applies here. Based on our construction of the MSA and the trial court's express and implied findings, we conclude that Sauer's alleged breach, *even if unexcused*, did not result in a forfeiture of her right to enforce Permit Partners's payment obligations.

Consequently, even if Sauer's disclosure of the MSA's contents in her pleadings constitutes a breach—and the trial court's conclusion that she did not thereby breach thus constitutes legal error—we conclude that the trial court did not err in failing to declare that Permit Partners's payment obligation ceased or, as a result, in rendering judgment for Sauer.[3]

---

[3] Per the parties' Rule 11 agreement, they each filed trial briefs with attached documentary evidence. In its prayer for relief, Permit Partners sought a declaratory judgment that "no payment is owed [by Permit Partners under the MSA] because Sauer materially breached the MSA . . . by breaching her confidentiality obligation . . . by disclosing the

*See* Tex. R. App. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."). We overrule Permit Partners's first issue.

We next consider Permit Partners's second contention—that the trial court erred in concluding that Permit Partners breached the MSA because the evidence establishes that its breach was excused by Sauer's prior alleged fraud in failing to disclose a "pending" DOL claim and then failing to "withdraw" the claim as required by the MSA. While the evidence conclusively shows that Sauer did not disclose that she had previously filed a DOL claim until after she executed the MSA, the evidence also conclusively shows that there was no pending DOL claim when the MSA was executed but, rather, that the DOL had previously concluded Sauer's claim on November 3, 2017—far in advance of the MSA's execution.[4] Accordingly, the trial court did not err by impliedly finding that Permit Partners's breach was not excused by Sauer's failure to disclose or withdraw the concluded DOL claim. We overrule Permit Partners's second issue.

---

confidential payment amount—an incurable breach that ceases [Permit Partners's] payment obligations under the MSA." Permit Partners also sought its attorney's fees but did not seek any actual damages.

[4] Evidence in the record demonstrates that Sauer was uncertain about the status of her DOL claim and that she relayed the existence of the claim and her uncertainty to Permit Partners for the first time on July 29, 2018, prompting Permit Partners to withhold its first settlement payment. However, the uncontroverted fact—as supported by a letter from the DOL—remains that, despite Sauer's uncertainty, the DOL had previously "concluded" her claim.

*Sufficiency of the evidence supporting attorney's fees*

In its third issue, Permit Partners contends that the trial court erred in awarding Sauer attorney's fees because (1) she failed to prove that her fees were reasonable or necessary, and (2) attorney's fees cannot be awarded against an LLC. We understand the former argument to be that Sauer's evidence supporting attorney's fees was insufficient, and we address it first.

To support her claim for attorney's fees, Sauer presented, and the trial court admitted without relevant objection,[5] the affidavit of her attorney Anthony Icenogle and his fee invoice. Permit Partners contends that the affidavit and invoice do not contain all the elements the supreme court has explained are necessary to support attorney-fee awards based on the lodestar method (i.e., hours of work performed multiplied by the hourly rate). *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760–61 (Tex. 2012) (explaining lodestar method of proof and need for documentary evidence to prove that fees were reasonable and necessary). Specifically, Permit Partners contends that the fee invoice does not indicate who performed the services detailed. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019); *see El Apple*, 370 S.W.3d at 763 ("[I]f multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks."); *see also* Tex. Civ.

---

[5] At trial, Permit Partners objected to admission of the fee invoice only on the basis of Sauer's failure to submit the exhibit the week prior to trial pursuant to the parties' Rule 11 agreement. Permit Partners does not contend on appeal that the trial court erred in admitting the exhibit.

Prac. & Rem. Code § 38.001 (providing for recovery by prevailing party of "reasonable attorney's fees" on breach-of-contract claim).

Permit Partners is correct that the supreme court has included the identity of who performed the legal services among the minimum-required evidence to support an award of attorney's fees under the lodestar method. *See Rohrmoos Venture*, 578 S.W.3d at 498. However, we conclude that the evidence in this record sufficiently identifies that it was Icenogle who performed the services for which Sauer sought to recover. While the fee invoice itself does not specifically identify which attorney with Icenogle's firm performed the detailed legal services, and merely recites an hourly rate of $300, Icenogle's affidavit specifies, relevantly, that: he is "the attorney" for Sauer, his hourly rate is $300, the amount of attorney's fees (calculated at $300 per hour) that Sauer had incurred so far is $11,706, and the amount of additional attorney's fees that he "expected to incur . . . to prepare for and attend the trial" in this case is $900. The trial court could reasonably have concluded that the affidavit, in conjunction with the fee invoice, sufficiently identified that it was Icenogle who performed the legal services at issue. We overrule Permit Partners's complaint that Sauer's evidence failed to meet the *Rohrmoos Venture* requirements.

Permit Partners raises two additional complaints about Sauer's evidence on attorney's fees: (1) it was insufficient to support the portion of the award for appellate attorney's fees because, in his affidavit, Icenogle did not specifically identify "any background by which he has the ability to testify as to appellate attorney's fees," and (2) it outlined time billed for Sauer's "unsuccessful" summary-judgment motion and for defending against Permit Partners's claims, which are not "proper" bases for attorney's-fee awards.

We overrule Permit Partners's complaint that the evidence was insufficient to support an award of appellate attorney's fees. In his affidavit, Icenogle averred as to the fees he expected Sauer to incur as "reasonable and necessary" in case of an appeal by Permit Partners. He also averred that he had been a licensed Texas attorney since 1983, with the majority of his practice concentrated in Travis County, and that he was "fully cognizant and aware of the type and nature of attorneys' fees reasonably charged for legal services" in Travis County. Permit Partners did not object to this affidavit or introduce any controverting evidence, and Permit Partners has not cited any relevant authority requiring more specificity about an attorney's appellate background when opining about appellate attorney's fees. Accordingly, the affidavit of Sauer's attorney constituted legally and factually sufficient evidence to support the trial court's award of appellate attorney's fees in the event of unsuccessful appeals by Permit Partners. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (explaining that evidence is legally sufficient if it would enable reasonable and fair-minded people to make finding under review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (explaining that when party challenges factual sufficiency of adverse finding on issue on which it did not have burden of proof, it must demonstrate that finding is so contrary to overwhelming weight of evidence as to be clearly wrong and manifestly unjust).

We also overrule Permit Partners's contentions about the "improper" bases for Sauer's attorney's fees because it did not preserve error as to the complaints. *See* Tex. R. App. P. 33.1. However, even if its general contention in its motion for new trial that Sauer "failed to segregate her fees between recoverable and unrecoverable claims" could be construed to encompass these complaints, Permit Partners does not cite any applicable authority supporting a reversal of the award on those bases. *Cf. Smith v. Texas Farmers Ins.*, 82 S.W.3d 580, 588 (Tex.

12

App.—San Antonio 2002, pet. denied) ("[I]f the plaintiff's breach of contract claim and the defendant's counterclaim encompass matters that are indistinguishable and arose from the same transactions, and the same facts required to prosecute the claim are required to defend against the counterclaim, then attorney's fees may be appropriate."). Furthermore, the record contains sufficient uncontroverted evidence—in the form of Icenogle's affidavit—to support the trial court's conclusion that the attorney's fees Sauer incurred, including time spent pursuing summary judgment and defending against Permit Partners's breach-of-contract claims, were reasonable and necessary to prevail on her claims. We overrule Permit Partners's contention that Sauer "failed to prove the reasonableness or necessity of her attorney's fees."

### *Attorney's fees assessed against the LLC*

We now turn to Permit Partners's contention that the trial court erred in assessing attorney's fees against the LLC rather than solely against Cancialosi. Sauer concedes that the award of attorney's fees against the LLC cannot stand and that the award should be reversed as to that party. *See, e.g.*, *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that Section 38.001 does not authorize recovery of attorney's fees against LLC). We, accordingly, hold that the trial court erred in assessing attorney's fees against the LLC and reverse the award of attorney's fees against it.

### CONCLUSION

We reverse the portion of the trial court's judgment awarding Sauer attorney's fees against Permit Partners, LLC and render judgment accordingly. We affirm the remainder of the judgment.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed:   January 29, 2021